## In re AUGHENBAUGH.

### Appeal of KUNKEL et al.
### No. 7765.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 10, 1941.

Decided Feb. 11, 1942.

W. Burg Anstine, of York, Pa. (Robert I. Shadle and Anstine & Shadle, all of York, Pa., on the brief), for appellants.

Sidney G. Handler, of Harrisburg, Pa. (Douglass & Handler, of Harrisburg, Pa., on the brief), for appellee.

Before MARIS, JONES, and GOOD-RICH, Circuit Judges.

MARIS, Circuit Judge.

On February 15, 1938, Alpheus Aughenbaugh executed a bond and mortgage in favor of Blass-Meyers Mfg. Company, Inc., in consideration of a series of cash advances totalling $2,925 previously made him by that company. The mortgage was recorded April 13, 1938. On June 15, 1938, Aughenbaugh filed a voluntary petition in bankruptcy. Thereafter his real estate was sold by his trustee in bankruptcy. Blass-Meyers claimed priority in payment out of the proceeds of the sale by virtue of the lien of its mortgage. At the direction of the referee the trustee in bankruptcy filed exceptions to this claim. A hearing was held upon the exceptions by the referee, who found as a fact that Aughenbaugh was insolvent at the time of the transfer, and directed the mortgage to be disallowed as a priority claim. The District Court for the Middle District of Pennsylvania, upon petition for review, concluded that the referee's finding as to insolvency was not supported by the evidence, set aside the referee's order and entered an order allowing the mortgagee's claim as a priority claim. Twenty-three wage claimants have appealed from this order.

The appellants urge that the district court erred in setting aside as not supported by evidence the referee's finding

that Aughenbaugh was insolvent[1] on April 13, 1938, the day upon which the mortgage he gave to Blass-Meyers was recorded.[2] In passing upon this question we may consider only the evidence which was presented to the referee at the hearing upon the trustee's exceptions to the mortgagee's priority claim. We may not consider other evidence which may have been in the files of the referee in the bankruptcy administration proceeding. To hold otherwise would be to violate the fundamental concept of procedural due process that a party to litigation is entitled to have the evidence relied on by his opponent presented at the hearing of his case so that he may have opportunity to cross-examine his opponent's witnesses and to offer evidence in rebuttal. As the Supreme Court said in Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U.S. 88, 93, 33 S.Ct. 185, 187, 57 L.Ed. 431, "manifestly there is no hearing when the party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute." And again as stated in United States v. Abilene & Southern R. Co., 265 U.S. 274, 288, 44 S.Ct. 565, 569, 68 L.Ed. 1016: "Papers in the Commissioner's files are not always evidence in a case. New England Divisions Case [Akron, C. & Y. R. Co. v. United States], 261 U.S. 184, 198, note 19, 43 S.Ct. 270, 67 L.Ed. 605. Nothing can be treated as evidence which is not introduced as such."

Particularly apposite is the statement of Chief Justice Hughes in Crowell v. Benson, 285 U.S. 22, 48, 52 S.Ct. 285, 291, 76 L.Ed. 598, that "Facts conceivably known to the deputy commissioner, but not put in evidence so as to permit scrutiny and contest, will not support a compensation order." If this is the rule as to administrative bodies which are expected to apply their expert knowledge in their special field a fortiori it applies to the proceedings of a purely judicial body such as a court of bankruptcy.

Although the exceptions of the trustee to the priority claim of the mortgagee were filed in the general bankruptcy proceeding they raised a distinct controversy for determination by the referee which it was his duty to treat as an independent litigation, summary in form it is true,[3] and to consider solely upon the evidence presented at the trial of that issue. If the trustee desired to rely upon any papers already on file in the bankruptcy proceeding it was incumbent upon him to offer them at the hearing of his exceptions in order that the mortgagee might know that they were being relied upon and might have an opportunity to meet them with such other evidence as might be available to it.

Turning to the consideration of the record of this case we find that the only evidence offered at the hearing upon the exceptions was that given by Aughenbaugh

---

[1] By Section 1(15) of the Bankruptcy Act of 1898, 11 U.S.C.A. § 1(15) it is provided that "a person shall be deemed insolvent within the provisions of this title whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

[2] At the time the mortgage to Blass-Meyers was recorded the Home Owners' Loan Corporation held a mortgage on at least a part of Aughenbaugh's real estate. No other creditor had a lien on any part of his property. It might, therefore, be argued that February 15, 1938, the date when the Blass-Meyers mortgage was given, was the significant date as to any property which was not subject to the Home Owners' Loan Corporation mortgage. See Stover v. Valley Nat. Bank of Chambersburg, 3 Cir., 1931, 48 F.2d 54. But since that date likewise was with-

in four months of bankruptcy and there is no suggestion in the evidence that the facts relevant to the bankrupt's insolvency changed in the two months interval the failure of the court below to consider it would seem to be without any practical significance.

[3] Blass-Meyers urges that the district court had no jurisdiction to pass upon its claim to preferential payment in a summary proceeding. But since the property upon which its mortgage was asserted to be a lien was all in the exclusive possession of the bankrupt at the time of bankruptcy and of the trustee thereafter the summary jurisdiction of the court is clear. White v. Schloerb, 178 U.S. 542, 20 S.Ct. 1007, 44 L.Ed. 1183; Chicago Board of Trade v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533; In re Kellogg, D.C., 113 F. 120, 123, affirmed, 2 Cir., 121 F. 333, and In re Oswegatchie Chemical Products Corp., 2 Cir., 279 F. 547, 548, certiorari denied sub nomine Abbott Factory, Inc., v. Bancroft, 259 U.S. 580, 42 S.Ct. 464, 66 L.Ed. 1073.

who testified that in September, 1937 he owed the following debts:

| | |
|---|---:|
| Blass-Meyers Mfg. Co. | $2,925.00 |
| George Wolf & Son | 1,300.00 |
| American Thread Co. | 300.00 |
| Mansfield Thread Co. | 200.00 |
| York Haven State Bank | 850.00 |
| Peter's Trucking Co. | 900.00 |
| Total | $6,475.00 |

In addition he owed a small balance to the Singer Sewing Machine Company which he paid in full by January, 1938. He also testified that at that time he owned a factory building upon which he placed a valuation of $6,500 and for which, together with machinery, he asked $8,000, a warehouse subject to a mortgage held by the Home Owners' Loan Corporation, and his own home. In November, 1937 he signed a statement in which he listed his assets at $22,500 and estimated his net worth at $15,200. There was nothing further offered at the hearing from which the value of Aughenbaugh's assets or the extent of his liabilities on April 13, 1938, might be determined.

Our examination of the record indicates that the referee reached his decision from a consideration not only of the evidence offered at the hearing upon the trustee's exceptions but also of the bankruptcy schedules, the official appraisal, the proofs of claim, the return of sale and perhaps other papers on file in the bankruptcy administration proceeding, none of which was offered in evidence. It is true that the papers in this file so far as relevant would have been admissible as court records without other proof and would if offered in evidence have constituted some evidence of the facts to which they related. But the facts to which they related, being disputed in the very controversy under consideration, were not the sort of facts of which the referee was entitled to take judicial notice.[4]

The district court in holding that the referee had erred in his finding of insolvency likewise took into consideration all of the papers in the general file of the bankruptcy proceeding and reached the conclusion that they did not furnish sufficient support for that finding. Although the action of the court was right when only the evidence properly before the referee is considered, it is clear that the trustee, the referee and the district court all misapprehended the extent of the evidence which was properly before the referee and apparently did not realize that it was not proper for the referee to consider the documents in the general file which the trustee had not offered in evidence at the hearing upon the exceptions to the Blass-Meyers claim of priority. Since we are not prepared to say that these documents, if properly before the referee, would not, with the other evidence, have been sufficient to support his finding of insolvency, we think that the rights of the appellants may well have been prejudiced by this misapprehension on the part of all parties concerned. Under the circumstances of this case we are satisfied that another opportunity should be afforded them to offer evidence in support of the exceptions.

Accordingly the order of the district court is reversed and the cause is remanded with directions to grant a rehearing of the exceptions filed to the claim of Blass-Meyers Mfg. Company.

---

[4] Wigmore, in his treatise on evidence (Third Edition) § 2566, states that judicial notice means " * * * acceptance of a matter as proved without requiring the party to offer evidence of it."