**In re LUDWIG HONOLD MANUFAC-TURING COMPANY, Debtor.**

**The COMMITTEE OF CREDITORS OF LUDWIG HONOLD MANUFACTUR-ING COMPANY, INC. and Fred Zimmerman, Trustee, Plaintiffs,**

v.

**CENTRAL PENN NATIONAL BANK, Defendant.**

**Bankruptcy No. 81–04610G.**
**Adv. No. 83–1742G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 22, 1983.

---

**646**

Nancy V. Alquist, Douglas J. Smillie, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff, The Committee of Creditors of Ludwig Honold Mfg. Company, Inc.

Fred Zimmerman, Pennsauken, N.J., trustee.

Melvin Lashner, Daniel Bernstein, Melvin Lashner Associates, Philadelphia, Pa., for plaintiff, Fred Zimmerman, trustee.

James A. Matour, White & Williams, Philadelphia, Pa., for defendant, Central Penn Nat. Bank.

John J. Lamb, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for debtor, Ludwig Honold Mfg. Company, Inc.

Warren T. Pratt, Drinker Biddle & Reath, Philadelphia, Pa., for Robert Morris Associates, amicus.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether we should grant the motion of Central Penn National Bank ("Central Penn") for reconsideration of our decision of October 13, 1983, which denied Central Penn's motion to dismiss the plaintiff's complaint for marshalling. For the reasons stated herein we will deny the motion.

In our previous decision we addressed the issue of whether, under the doctrine of marshalling of assets, we should order a creditor who holds a security interest in the debtor's property as well as the property of the debtor's sureties, to foreclose its security interest in the sureties' property prior to recourse against the debtor's property. *Committee of Creditors of Ludwig Honold Manufacturing Co., Inc. v. Central Penn National Bank* (In Re Ludwig Honold Manufacturing Co., Inc.) 33 B.R. 724 (Bkrtcy.E.D.Pa.1983). In its motion for reconsideration, Central Penn raises several grounds, the first of which is that unsecured creditors lack standing to bring an action for marshalling. This question has been rendered moot since the trustee is a party to this adversary proceeding. Pursuant to 11 U.S.C. § 544(a) the trustee asserts his status as a creditor who holds a lien on all of the property of the bankruptcy estate. Consequently, the trustee has the standing of a *secured* party to bring an action for marshalling and thus we find this basis for reconsideration without merit.

As its second and third contentions, Central Penn states that there is no fund which can be the subject of a marshalling action and that, accordingly, it has waived the application of the doctrine by failing to raise it timely. In support of its arguments, Central Penn asserts that the trustee has liquidated virtually all the assets of the debtor and has distributed the proceeds to Central Penn which holds a security interest in these assets. Under these theories Central Penn cites *American National Ins. Co. v. Vine-Wood Realty Co.*, 414 Pa. 263, 199 A.2d 449 (1964), although no authority is cited which would preclude the exercise of the court's equitable jurisdiction to order the return of the disbursed funds from the bank to the debtor. Furthermore, although *Vine-Wood Realty* states that a party is deemed to have waived the right to marshall if it is not timely asserted, the facts of this case, in its present pretrial posture, do not clearly indicate that the assertion was untimely. Thus, we will deny the second and third grounds for reconsideration.

As its fourth basis for reconsideration Central Penn asserts that marshalling is improper if it would result in prejudice to the creditor. *Westinghouse Credit Corp. v. Central Trust Company* (In Re Leonardo), 11 B.R. 453, 455 (Bkrtcy.W.D.N.Y.1981). As stated above, at this stage of the proceedings the record is less than replete with evidence that Central Penn would be prejudiced by an order for marshalling and, consequently, we will deny this aspect of the motion for reconsideration.

The fifth basis for reconsideration is predicated on the contention that marshalling would be a useless act since the sureties would be subrogated to Central Penn's claim against the debtor's estate, which in turn would mean that the debtor would be indebted to the sureties in the same amount that it was previously indebted to Central Penn. Central Penn contends that such a result would do nothing to improve the lot of the unsecured creditors or the trustee. We disagree, since it is not clear that the sureties will be entitled to subrogation as a matter of course if marshalling is granted. As stated in our earlier opinion, marshalling would be allowed only if the sureties were guilty of certain types of inequitable conduct. Such conduct may preclude the sureties' use of the equitable doctrine of subrogation. The principles of this doctrine have been summarized as follows:

> [Subrogation] is now a mechanism so universally applied in new and unknown circumstances that it is easy to overlook that it originates in equity. Every facet, whether substantive or procedural, is controlled by the equitable origin and aim of subrogation. These principles, so well established that to cite cases would be an affectation, find expression in accepted texts, as the following excerpts reflect. "Legal subrogation is a creature of equity not depending upon contract, but upon the equities of the parties." 50 Am.Jr. Subrogation § 3 at 679.... It is "a consequence which equity attaches to certain conditions. It is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case." § 10 at 688. Be-

cause its object is "to do complete and perfect justice between the parties without regard to form or technicality, the remedy will be applied in all cases where demanded by the dictates of equity, good conscience, and public policy. Consequently, relief by way of subrogation will not be granted where it would work injustice, or where innocent persons would suffer, or where the result would be inimical to a sound public policy." § 11 at 690. As "subrogation is administered upon equitable principles, it is only where an applicant has an equity to invoke that the courts will interfere. Moreover, the equity of the party seeking subrogation must be strong and his rights clear, and his equity must be superior to that of other claimants." § 12 at 690–91. And it "will not be enforced to the prejudice of other rights of equal or higher rank, or to displace an intervening right or title, or to overthrow the equity of another person."

*Compania Anonima Venezolana De Navegacion v. A.J. Perez Export Co.,* 303 F.2d 692, 697 (5th Cir.1962), cert. den. 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276. Thus, we find this basis for reconsideration without merit.

As a final basis for reconsideration Central Penn asserts that a decision in favor of marshalling should be applied prospectively only and not to Central Penn in the case at bench. Central Penn contends that prospective application is justified on the grounds that such a decision would overrule precedent or would settle an issue of first impression which was not clearly foreshadowed. *Ettinger v. Central Penn National Bank,* 634 F.2d 120 (3d Cir.1980). Quite simply, the issue of the prospective application of our decision is premature since no decision has yet been made. Parenthetically, we note that the authority cited in our opinion supporting the denial of the defendant's motion to dismiss the complaint was not surprising or new. Our decision was reasonably foreshadowed by opinions from courts of this state (Penna.) and others prior to the consummation of the loan transac-

tion at issue. Consequently, we will deny this aspect of Central Penn's motion for reconsideration.

In summary, all of Central Penn's grounds in support of its motion for reconsideration of our decision of October 13, 1983, are without merit, and thus we will deny the motion.